# Carlisle Borough *v.* Long, Appellant.

*Road law—Sidewalk—Act of April 20, 1905, P. L. 235—Material of sidewalk—Notice to pave—Agreement to pave.*

1. Where a borough notifies a property owner to construct a sidewalk in compliance with an ordinance passed under the provisions of the Act of April 20, 1905, P. L. 235, and it appears that the street in question had been an open traveled public highway before it became a street of the borough, the owner cannot justify a refusal to comply with the notice, because the lines of the street had not been staked on the ground, or because it had never been opened to its full width, or because the sidewalk which would eventually be laid on the opposite side of the street would not conform in grade with those on defendant's side; nor in such a case can the owner refuse because no grade line had been given him by the borough, if it appears that there was no grading to be done, and that even if grading were necessary, the line could have been procured from the borough regulator.

2. Where a borough ordinance provides that sidewalks may be made either of brick, concrete or asphalt block, a property owner who is notified to construct a sidewalk may select any one of the three kinds of pavement, if the borough authorities have not specified a particular one; but if he neglects to comply with the notice to pave, he cannot complain if the borough in constructing the pavement selects the most expensive of the three kinds of material mentioned in the ordinance.

3. Where a property owner disputes an award of damages for opening a street as insufficient, and while the dispute is pending he is notified to construct a sidewalk, and thereafter he voluntarily enters into an agreement to accept a much larger sum as full settlement for his claim, and to construct a brick sidewalk within a time specified, and he accepts a part of the amount agreed upon, but neglects to construct the sidewalk, the borough may construct the sidewalk; and if the cost is greater than the balance due the owner, it may deduct the amount due and recover the balance.

Argued March 13, 1911. Appeal, No. 15, March T., 1911, by defendant, from judgment of C. P. Cumberland Co., May T., 1909, No. 119, on verdict for plaintiff in case of Carlisle Borough v. Oron Long and O. N. Long, individually and trading as Long & Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Scire facias sur municipal lien. Before SADLER, P. J.

At the trial it appeared that the action was brought to recover the cost of laying a sidewalk on Metzger street in the borough of Carlisle.

The court refused under objection and exception to permit the defendant to show that the street had not been laid out to the full width of sixty feet, and that the pavement as sued for had not been laid at an elevation corresponding to the road in front of defendant's property as provided by ordinance. [1]

The court also refused under objection and exception to permit the defendant to show that the street in question had not been marked on the ground. [2, 3]

Defendant presented the following points:

1. The uncontradicted evidence in the case is that the curb as laid does not form a gutter as provided for in the ordinance of the borough of Carlisle, and, therefore, there can be no recovery in this case. *Answer:* We cannot affirm this point and declare that the uncontradicted evidence is as therein set forth.  [4]

2. The uncontradicted evidence in the case is that Metzger, Hamilton and Lansdowne streets and Plain alley, as provided in the ordinance of 1894, have not been laid out, and, therefore, the plaintiff cannot recover. *Answer:* We leave to the jury to say whether Metzger street was laid out.  We instruct you that in passing upon this question, it is immaterial whether it has been opened the full width of sixty feet—that is not a material matter: that the abutting owners on the west side have not moved in their fences, or been compelled to do so, is a matter of no concern to the defendant, and cannot be set up as a defense.  The question is, was the street laid out—not whether it was opened to the full width. [5]

3. The uncontradicted evidence is that the "breadth, elevation and declination" of the pavement for which a recovery is sought was never given to defendants, and, therefore, there can be no recovery. *Answer:* We leave it for you to determine whether notice was given or not. [6]

4. That under all the evidence in the case, the verdict must be for the defendant. *Answer:* This point is refused. [7]

Plaintiff presented these points:

1. If the jury finds that a pavement was laid by the borough of Carlisle, upon failure of the defendants to construct the same, after notice, and that the street known as the Carlisle Springs road or Metzger street, was actually opened and used at the time the said pavement was built it is immaterial whether the same was actually opened to the full width fixed by viewers or not, and the verdict should be for the plaintiff. *Answer:* This point is affirmed; as stated before, it is not a matter for the defendant to complain about as to whether the street has been opened the full width or not. The question is whether the street was laid out. [8]

2. If the jury finds that the pavement was constructed and in part paid for by the borough under the agreement with the defendants, then the defendants would be estopped from denying that the street was laid out, or that they had no notice of a demand to construct the pavement in question. *Answer:* This point is affirmed, if you find that the street was laid out. [9]

3. Even if the jury should find that all of the requirements of the ordinances as to fixing grades had not been complied with, yet there would be a ratification in this case of the work done by its officers by the paying for the same and the filing of a lien. *Answer:* Affirmed. [10]

The court charged in part as follows:

[So that as early as October 14, 1907, Long & Company had notice to build their pavement. It was not built by the borough until the fall of 1908, a year afterward, and it has been suggested that as Long & Company failed to build their pavement by July 1, 1908, as they solemnly agreed to do, that, therefore, there would have to be an abandonment of the old resolution and a new resolution passed and new notice given them. Such

is not the law.   Due notice was given them on October 14, 1907, which they disregarded for nearly a year, and they also disregarded their obligation to build the pavement on or before July 1, 1908; having failed to comply with their agreement, it was not obligatory upon the borough, we tell you as a matter of law, to pass a new resolution and give them new notice.  If they got notice on the fourteenth, as they admit they did, then we can see no other way for the jury to find than that they had notice, and the fact that no new resolution was passed is a matter of indifference. Surely these defendants cannot complain of their own wrong.   They had the notice in 1907.   They agreed to complete their pavement by July 1, 1908.   They received money on account of it, and having failed to discharge their obligations, the borough was under no duty whatever to pass a new resolution, and give new notice to these men.

So that if you find that notice was given in 1907, then notice was given, and there is no contradiction of it.] [11]

The next point which we leave to you is whether this street is named Metzger street, that is, whether Metzger street and Springs road are the same.   Charitably we state, due to want of recollection, Mr. Oron Long when on the stand did not know that Metzger street was ever laid out—he is a busy man—a man who probably does not give a great amount of attention to business, but now, hadn't he notice that this street was laid out?   He appealed from the report of the viewers laying it out.   He signed this paper.   His brother swore that he was taking the appeal because Metzger street was laid out, and he and his brother entered into a recognizance to pay the costs which might accrue, if they failed to recover on their appeal from the laying out of Metzger street.   The ordinance of the borough calls it Metzger street.   The report of the viewers shows that it was for Metzger street.   If Metzger street and Springs road, as set forth in the lien filed in this case, are one and the same thing, then there can be no doubt that Metzger street has been laid out, and we

cannot possibly see how a jury would find otherwise.   It would be against practically all of the testimony in the case, except the faulty recollection of the two defendants, contradicted by the sworn papers that they executed.] [12]

Verdict and judgment for plaintiff for $230.   Defendant appealed.

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions; (4–12) above instructions, quoting them.

*R. W. Woods,* for appellant, cited: Oakdale Borough v. Sterling, 8 Pa. Superior Ct. 428; Chester v. Lane, 24 Pa. Superior Ct. 359; Steelton Borough v. Booser, 162 Pa. 630; Philipsburg v. Way, 12 Pa. Dist. Rep. 173.

*D. M. Graham,* and *S. B. Sadler,* for appellee, cited: York v. Beitzel, 41 Pa. Superior Ct. 194; Maynes v. Philadelphia, 34 Leg. Int. 331; McKnight v. Pittsburg, 91 Pa. 275; Darlington v. Com., 41 Pa. 63; Levy v. Oakmont Borough, 57 Pitts. Leg. Jr. 58.

OPINION BY HEAD, J., July 13, 1911:

The defendants were the owners of a lot of ground in the borough of Carlisle fronting on an ancient traveled public highway long known as the Springs Road.   By an ordinance dated July 12, 1894, the said borough ordained, inter alia, "a street to be sixty feet in width to run from the point on North Hanover street where the Carlisle Springs road intersects said Hanover street to the borough limits on the line of said Carlisle Springs road to be called Metzger street."   Viewers were duly appointed in the manner provided by law to assess the damages, if any, suffered by abutting lot owners by reason of the laying out and opening the same.   They made a report awarding to the defendants $25.00 damages.   From this report the defendants appealed.   While said appeal was pending, to wit, on October 14, 1907, the borough officials caused a notice

to be served on the defendants requiring them "to lay the pavement bordering on your lot on Metzger street within ten days after receiving this notice in accordance with the requirements of borough ordinance." The notice further declared that if the pavement was not laid within the time specified, the borough would proceed to lay the same and collect the cost thereof with ten per cent additional and all charges and expenses from the owners "as provided by the ordinances of the borough."

Nothing was done by either of the parties after the service of this notice until November 14, 1907, on which date an agreement in writing was entered into which had for its apparent object the settlement of the various matters in controversy between the borough and the defendants. This agreement recites the pending appeal of the defendants "from the report of viewers appointed to assess damages and levy contributions in the laying out and opening of Metzger street;" it provided that the same should be discontinued and withdrawn and that the borough was to pay to the defendants the sum of $175 "as full damages to them for the opening of said streets," etc. It further provided that $100 of said sum should be paid immediately upon the approval of the agreement by the town council and "the balance of said damages, to-wit, the sum of seventy-five dollars, to be paid upon the completion of the said Long & Co.'s pavement on the sidewalk along their property abutting on said Metzger street; provided that said Long & Co. shall before the 15th of December, 1907, grade the said sidewalk and make thereon a suitable cinder walk and shall likewise complete the said sidewalk by laying a brick pavement thereon six feet in width before the first day of July, 1908," etc. This agreement was signed by the defendants, was ratified by the town council, and the $100 paid to the defendants as therein provided.

Again a period of inactivity followed until October, 1908, when the borough, without further notice to the defendants, proceeded to lay down and construct a con-

crete sidewalk and curb along the line of the defendants' property and then filed a municipal lien to charge the said property with the costs and expenses thereof and ten per cent additional, aggregating the sum of $305. Credit thereon was allowed to the defendants for the balance of the unpaid damages stipulated for in the agreement, to-wit, $75.00, showing a net balance due the borough of $230. A scire facias on the lien was issued, affidavits of defense were filed, and a trial followed resulting in a verdict and judgment for the plaintiff for the sum claimed. From that judgment this appeal is taken.

We will first endeavor to ascertain the legal status of the parties under the general law and borough ordinances after the notice referred to was given without any regard to the contract already mentioned into which the parties subsequently entered. We will then inquire how far, if at all, the execution of that contract changed the mutual rights and obligations of the parties.

By the Act of April 20, 1905, P. L. 235, the legislature authorized boroughs to require the grading, paving, repaving and repairing of sidewalks, etc., and provided that on the neglect or refusal of the property owner to construct such sidewalk the borough might cause the same to be done and collect from the owner the costs thereof and ten per cent additional, together with all charges and expenses, and file a municipal lien against the lot to secure the payment thereof. By the ordinance of October 12, 1905, the plaintiff borough provided for the exercise of the power thus conferred upon it by the legislature and ordained that, upon the refusal of any lot owner to lay a sidewalk, the work should be done by the borough in accordance with the several ordinances relating to that subject, it then collecting the costs thereof with ten per cent additional from the lot owner. As we have already seen, the borough, in October, 1907, had notified the defendants to construct their sidewalk and the latter had refused or neglected to obey the demand of the notice. Was there any legal justification or excuse advanced by them to pre-

vent the borough exercising the right conferred by the legislature and exercised by the ordinance to which we have just adverted?

On the trial the defendants, following the lines foreshadowed by their affidavits of defense, made repeated efforts to prove by the testimony of witnesses that the lines of Metzger street had never been staked out on the ground; that it had never been opened to its full width; that the sidewalks which would eventually be laid on the opposite side of the street would not conform in grade with those on the side on which the defendants' property was situate, and other like matters, all of which were excluded by the learned trial court. It seems to us apparent, under the facts exhibited by the record and already referred to, that Metzger street was a lawfully ordained public street of the borough of Carlisle of the width of sixty feet. Having been an open traveled public highway before it became a street of the borough, there was no formality to be observed beyond the report of the viewers in opening the street. That it was not immediately opened to its entire legal width was a matter that in no way concerned the defendants. The borough could determine for itself when the public necessity required the use of the full width of the street. In the meantime it was invested with the right to exercise over that street all of the municipal powers given to it by the legislature for the regulation and control of its streets. The several assignments of error complaining of the exclusion of testimony of this character must therefore be dismissed.

But the corporate municipal will to which the legislature had given the sanction of public law was that and that only exercised through and manifested by its ordinances duly enacted. Let us look for a moment then at the ordinances that were in force in the borough of Carlisle at the time that the notice of October, 1907, was served on the defendants. There appears at that time to have been in force an ordinance adopted September 12,

1889, which provided that when sidewalks or pavements were thereafter to be laid they "may be made either of brick or concrete or asphalt block, excepting those places necessary for the passage of wagons," etc. Under that ordinance it may be conceded that the borough in the first instance would have been authorized to determine which one of the three kinds of sidewalk named therein should be put down by the defendants. Having failed in their notice to exercise such discretion, it would seem to follow that the defendants would have complied with their legal obligation had they made their own selection and laid their walk of any one of the materials named in the ordinance. They, however, did nothing, and therefore when the borough undertook to enforce compliance with the ordinance by laying the sidewalk itself, there was nothing to prevent it exercising the same discretion it could have lawfully exercised when it gave the notice.

The defendants further contend that they were excused from their obligation to lay the sidewalk after the receipt of the notice because no grade line for the location of the sidewalk was given, either in the notice or otherwise, by the borough officials. It does not appear, either from the lien filed or other evidence in the record, that there was any grading to be done beyond the ordinary leveling and preparation of the ground to make a fit foundation for the sidewalk. By an ordinance enacted as early as 1856, and apparently still in force, it was declared to be unlawful for any person to construct any pavement in any street of the borough "unless the height and breadth of said pavement shall have been first previously fixed and settled by the borough regulators." By a still earlier ordinance of June 17, 1852, it was made the duty of every lot owner, before constructing any sidewalk, "to call upon the regulators of said borough to fix the breadth, elevation and declination of said pavement or sidewalk."

From an examination of these ordinances then it would appear that the borough had the right to require the defendants to lay a sidewalk in front of their premises and

it gave them notice so to do. A means was provided by which the defendants could ascertain the width, height and declination of the sidewalk, and it was their duty to call upon the borough regulators and obtain from them the data necessary to enable them to comply with the requirements of the ordinances in this respect. And as to the material of the sidewalk, the ordinances provided for a choice on the part of the borough, and if it failed to exercise such right of choice, then it devolved upon the lot owner. There was no obstacle, therefore, that stood in the way of a compliance by the defendants with their obligation to lay the sidewalk, and we can discover no justification for their arbitrary refusal to do so unless such justification can be found in the agreement of November 14, 1907, already referred to.

By that agreement, as we have already seen, the defendants, in consideration of the payment therein provided for, undertook to grade the sidewalk and then to construct it six feet wide of brick. We may concede that if the defendants had stood upon this contract and complied with its obligation, the borough would have had no standing to object to a sidewalk composed of brick. But when the defendants refused to comply with the contract into which they had thus voluntarily entered, the borough was warranted in rescinding it; and it was not thereafter competent for the defendants to set up the contract they had declined to perform as a reason why the borough could not assert its right to compel the laying of a sidewalk under general ordinances, of any such material as was provided for in those ordinances. In other words, the defendants having, so far as this record shows, without any sufficient reason, broken that contract, it practically disappeared from the case. The borough was thus left in the full exercise of all the powers it possessed before the contract was entered into. As we have already seen, it had long before that time served a notice upon the defendants to lay a sidewalk in the manner provided by the ordinances. The defendants were in default under that notice;

**638**    CARLISLE BORO. *v.* LONG, Appellant.

Opinion of the Court—Dissenting Opinion.    [47 Pa. Superior Ct.

the right of the borough to proceed to lay the sidewalk itself and charge the cost thereof to the lot owner was complete; and the defendants could not absolve themselves from their duty to obey the injunctions of the ordinances and the notice by the interposition of a contract which they had steadily refused to perform.

Taking this view of the case, we can perceive no reason for a separate discussion of the several assignments of error. We may grant it is somewhat difficult to determine precisely the idea the learned trial court had in view in affirming the plaintiff's third point (tenth assignment of error), or the effect which such instructions might have had upon the minds of the jury had there been in issue any question of fact that ought to have relieved the defendants from the legal obligation otherwise resting on them. But there was no evidence produced or offered on the part of the defendants that in our judgment would have had the legal effect of relieving them from the duty of putting down the sidewalk, or, failing in that, from the obligation of paying for it after the borough had put it down. It is sufficient then to say that no one of the assignments exhibits any substantial error on the part of the trial court which would warrant us in reversing the judgment that has been entered.

Judgment affirmed.


RICE, P. J., dissenting:

I assume it will not be questioned, that if a property owner be duly required and notified to lay a particular kind of sidewalk, the borough cannot enter a lien against his land for the cost of a different kind of sidewalk, and the additional penalty, without a new notice to him and a reasonable opportunity to comply with it: Pittsburg v. Biggert, 23 Pa. Superior Ct. 540; Shady Avenue, 34 Pa. Superior Ct. 327. As I view this case, the agreement between the borough and the defendant, as to the kind of sidewalk to be laid, took the place of notice on the part of the borough to lay that kind. When the defendant de-

faulted under the agreement, the right of election which he may have had under the former notice did not revive; neither did the borough's right of election under that notice revive. The right of election under that notice had been superseded by the agreement that a brick sidewalk should be laid. That agreement was part of a larger agreement which had been partially executed, and, in consequence, the status quo could not be restored. The borough might have laid a brick sidewalk in accordance with the agreement, thus treating the agreement as the equivalent of notice to lay the kind of sidewalk therein designated. But a condition precedent to the right to lay a different kind of sidewalk at his cost, was notice to the property owner, and a reasonable opportunity to comply with it. I cannot assent, therefore, to the proposition that the agreement is to be entirely disregarded in the determination of the question before us, for as already suggested, the status quo could not be wholly restored. This being so, it seems unreasonable to hold that the borough might rescind the agreement as to the kind of sidewalk to be laid, and fall back on the original notice that had been given to the property owner.

HENDERSON, J., concurs in foregoing dissent.